UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TAUMERA MORROW, | ) | Civil Action No.: 4:13-cv-0695-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLINA UROLOGIC RESEARCH | ) | |
| CENTER, LLC, and STACY HARRELSON | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff brings this employment discrimination action pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. (Title VII) and 42 U.S.C. § 1981, alleging race

discrimination, hostile work environment and retaliation.  She also asserts state law causes of action

for intentional infliction of emotional distress and defamation.[1]  Plaintiff originally filed this action

in the Court of Common Pleas, Horry County, South Carolina.  Defendants removed the action to

this court on March 15, 2013.  Presently before the court is Defendants' Motion for Summary

Judgment (Document # 25).  A hearing was held via teleconference on July 29, 2014.  All pretrial

proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. §

636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because this Motion is potentially

dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the

district judge.

## II.    FACTS

Carolina Urological Research Center (CURC) is a clinical research facility in Myrtle Beach,

---

[1]Plaintiff also alleged a state law cause of action for breach of contract, but withdrew that
claim in her Response.  Pl. Response pp. 32-33.

South Carolina. During the relevant time period, CURC never employed more than ten employees. Pl. Dep. 35-37. Dr. Neal D. Shore serves as Medical Director for CURC. Shore Dep. 6. In that capacity, Dr. Shore makes all ultimate hiring, firing and disciplinary decisions for CURC. Shore Dep. 15, 18, 29. Stacy Harrelson works as Director of Nursing for CURC. Harrelson Dep. 9. Harrelson supervises all staff members at CURC and reports directly to Dr. Shore. Harrelson Dep. 10; Shore Dep. 9.

Plaintiff is a nationally certified medical assistant and certified clinical research coordinator. Pl. Aff. ¶ 4 (Ex. 1 to Pl. Resp.). Dr. Shore made the decision to hire Plaintiff, an African American female, as a clinical research coordinator on April 14, 2008. Shore Dep. 15; Harrelson Dep. 17; Borusovic Dep. 44; Pl. Dep. 28. The employment application completed by Plaintiff refers to Atlantic Urology Clinics, LLC (AUC) at all times. Ex. 4 to Pl. Resp. Nowhere on the application completed by Plaintiff does it mention CURC. Id. CURC represents on its website that it "is a separate and independent research arm of Grand Strand Urology, a division of Atlantic Urology Clinics in Myrtle Beach, South Carolina." Http://carolinaurologicresearchcenter.com/index.php. AUC handles all human resources and other labor issues for CURC. Asbill Dep. 13. AUC and CURC list each other as affiliates and Dr. Shore is listed as a physician of AUC. www.Atlanticurologyclinics.com. AUC lists CURC as one of the offices of AUC at 823 82nd Parkway in Myrtle Beach, SC. Id. Plaintiff received a letter on March 18, 2008, stating that she had been hired by AUC, and the letter lists Dr. Shore as a doctor with Grand Strand Urology. Ex. 4 to Pl. Resp.; Borusovic Dep. 13. Upon arrival, Plaintiff received a Terms of Employment Notice from AUC. Ex. 6 to Pl. Resp.

Plaintiff worked as one of five staff employees at CURC under the direct supervision of Harrelson. Pl. Dep. 36-37; Harrelson Dep. 12. The other individuals making up CURC were

Harrelson, Dr. Shore, and four other doctors, who are partners of CURC.  Pl. Dep. 35; Shore Dep. 18-19.  Plaintiff was the only African-American employee at CURC.  Pl. Aff. ¶ 13.

While employed by CURC, Plaintiff received several corrective actions.  The first documented incident occurred on September 16, 2009.  Corrective Action dated Sept. 9, 2009 (Ex. 19 to Def. Motion).  On this occasion, Plaintiff yelled at Harrelson and when Harrelson asked her to "control the volume and tone of her voice," Plaintiff continued yelling and asked Harrelson if she wanted to "take this outside?"  Id.  Plaintiff avers that both she and Harrelson were both yelling and Plaintiff asked Harrelson if she wished to move the discussion to a private room, not outside.  Pl. Aff. ¶ 10.

CURC issued a second corrective action to Plaintiff on April 12, 2010, for failure to communicate with patients, supervisors, and treating physicians.  Corrective Action dated Apr. 12, 2010 (Ex. 21 to Def. Motion). The reason given for this corrective action was Plaintiff's failure to properly communicate with a patient resulted in the patient leaving the facility and refusing further treatment.  Id.  However, Plaintiff avers that the problem with the patient arose out of Parkway Surgery Center's failure to schedule the patient appropriately.  Pl. Aff. ¶ 11.

On April 23, 2010, CURC issued a third corrective action to Plaintiff for working unapproved overtime and for failing to follow the directives of her supervisor.  Corrective Action dated Apr. 23, 2010 (Ex. 23 to Def. Motion).  Prior to this corrective action, Harrelson instructed Plaintiff on five occasions that no overtime would be approved.  Emails (Ex. 24 to Def. Motion).  Plaintiff worked five hours and two minutes of unapproved overtime that week.  Corrective Action dated Apr. 23, 2010.

From September 2010 through January 2011, Plaintiff sent personal emails from her work computer, when, she concedes, she should have been working.  Pl. Dep. 85-87, 93, Exs. 7-9 to Pl.

Dep. By sending these emails, Plaintiff violated CURC's computer and electronic communications policy, which provides "[a]ll electronic and telephonic communication systems . . . are to be used only for job-related and . . . sponsored purposes." Atlantic Urology Clinics, LLC's Handbook cover page and p. 23 (Ex. 28 to Def. Motion).

On January 3, 2011, Plaintiff interrupted Dr. Shore while he was treating a patient. Email (Ex. 29 to Def. Motion); Pl. Dep. 107-10. Harrelson and Asbill testified that, due to the confidential and personal nature of medical treatment, it is extremely inappropriate to interrupt a physician while he is treating a patient. Asbill Dep. 21; Harrelson Dep. 39. Plaintiff interrupted Dr. Shore because she was upset by the tone of voice used by Harrelson. Pl. Dep. 107; Email (Ex. 29 to Def. Motion). Just prior, Harrelson and Plaintiff were discussing business meeting in San Diego and Plaintiff mentioned that she did not know Harrelson was going with her. In response, Harrelson yelled at Plaintiff, saying "I don't have to tell you anything." Harrelson accused Plaintiff of being volatile. Plaintiff informed Harrelson that she would take the matter to Dr. Shore as Asbill had instructed her to do in the past. Email (Ex. 31 to Def. Motion); Pl. Dep. 107. Plaintiff interrupted Dr. Shore because she was upset that Harrelson was provoking her. Email (Ex. 29 to Def. Motion); Pl.Dep. 107-10.

Plaintiff's last day of work was January 26, 2006, when she sent numerous emails that contributed to CURC's decision to terminate her employment. Longieliere Statement dated Jan. 26, 2011 (Ex. 33 to Def. Motion); Email string from Plaintiff to Whitlock dated Jan. 26, 2011 (Ex. 34 to Def. Motion). Plaintiff acknowledges that she was not sleeping very well at that time.[2] Pl. Dep. 101. The morning of January 26, 2011, at 8:09 a.m. and 8:32 a.m., Plaintiff sent two emails to

---

[2]The night before January 26, 2011, Plaintiff sent emails to friends at 12:36 a.m. and 4:06 a.m. Emails (Ex. 39 to Def. Motion).

Michael Asbill and Sara Borusovic, who provided human resources consultation services to CURC, regarding the events that occurred when she interrupted Dr. Shore while he was treating a patient. Emails (Ex. 40 to Def. Motion); Asbil Dep. 6; Borusovic Dep. 10-11.  In these emails, Plaintiff complained about the manner in which Harrelson spoke to her on that date.  Id.  She indicated that she felt Harrelson's behavior was "harassing" and "workplace harassment."  Id.

Later the same day, Plaintiff became upset when Harrelson required her to see a patient before allowing her to leave early for the day.  Pl. Dep. 116-17.  As a result, Plaintiff sent a series of emails revealing her displeasure with Harrelson, using all capital letters and multiple exclamation points.  Email string (Ex. 44 to Def. Motion).  Plaintiff admitted she was screaming at Dr. Shore, Asbill, and Harrelson in these emails.  Pl. Dep. 113.  In the first email sent to Dr. Shore, Harrelson, and Asbill at 1:30 p.m., Plaintiff wrote "THIS WOMAN [Harrelson] IS ABSOLUTELY RELENTLESS!!!!"  Email string (Ex. 47 to Def. Motion).  Twenty-six minutes later, Plaintiff sent another email, in part below, to Asbill, Dr. Shore and Harrelson:

> FYI!! PLEASE PAY ATTENTION TO THIS!!! THIS PATIENT IS VERY VERY
> PISSED!!! I MEAN HE IS EXTREMELY PISSED!!!!!!!!!!  I AM DOING
> EVERYTHING IN MY POWER TO FIX THIS TO MAKE HIM STAY HERE
> WHILE STACEY IS SITTING IN HER OFFICE READING MY EMAILS AND
> DOING NOTHING NOTHING NOTHING TO HELP!!!!  NOW IF THIS ISNT A
> SOLID CRY FOR HELP.  ALL OF YOU . . . . ANYONE OF YOU CAN COME IN
> AND TAKE MY PLACE AND COMPLETE THE VISIT.

Id.

After receiving the second email of the afternoon, Harrelson instructed Plaintiff to go home for the day.  Pl. Dep. 130.  However, Plaintiff did not leave the facility.  Id.  Instead, Plaintiff remained at her desk and sent her final email of the day at 2:34 p.m.  Email (Ex. 49 to Def. Motion); Pl. Dep. 130.  Plaintiff sent the email to Dr. Shore and copied a number of other individuals, including Harrelson.  Email (Ex. 50 to Def. Motion).  The email states in part,

I DONT KNOW WHERE STACEY IS!! all I can say that she has been very very very mean to me today . . . . I KNOW STACEY IS A LIAR!!!! BECAUSE I KNOW SOME TYPE OF MONITORING DEVICE WAS PUT ON MY COMPUTER ...... BECAUSE I KNOW SHE RAMBLED THROUGH MY DESK AND THAT WAS THE HESITATION FOR HER LETTING ME GO HOME BECAUSE IM SICK!!!! EVEN THOUGH I KNOW RACIST COMMENTS "MAY HAVE BEEN SAID BECAUSE I AM A BELIEVER!!!! . . . I AM STILL HERE EVEN THOUGH MY SUPERVISOR THE REAL FOOL!!!! (AND I PUT THAT AS NICELY AS POSSIBLE) THE FOOL IS GONE BUT I AM HERE!!! . . . I PLAN TO COME BAC HERE TOMORROW. RIGHT NOW MY BACK IS TO THE DOOR SO I DON'T FEEL SAFE!!!!!! SO IF IM ON HOLD TOO LONG IM LEAVING BECAUSE THE FOOL "MAY" TRY TO ATTACK ME . . . . if I do come back it will not be to hurt anyone but I will have a police escort!!!!!!! you know just for my safety!!!! like everyone n this office knows but are afraid to say ....... yeap SHE is the fool!!!!!!

Id.

After sending this email, Plaintiff left for the day. Pl. Dep. 130. Once at home, Plaintiff received a telephone call from Asbill, who informed her she was on paid administrative leave. Pl. Dep. 130-32; Longieleire Statement dated Jan. 26, 2011. Asbill also informed Plaintiff that CURC would investigate the complaints she made against Harrelson. Id.

Asbill and Borusovic conducted the investigation into Plaintiff's complaints regarding Harrelson's behavior towards her. Notes of CUSC staff meeting on Jan. 27, 2011 (Ex. 54 to Def. Motion); Asbill Dep. 10. Asbill and Borusovic interviewed three of Plaintiff's coworkers, Jake Lowery, Jennifer Baiden and Jennifer Sutton. Id. The employee interviews revealed that Plaintiff's behavior was to blame for the tension between Plaintiff and Harrelson and that Harrelson was not the aggressor. Id.

On January 28, 2011, Dr. Shore made the decision to terminate Plaintiff for interfering with patient treatment, insubordination, violation of the company's computer and electronic policy, and unprofessional and inappropriate behavior and Asbill notified her of this decision. Letter (Ex. 59 to Def. Motion); Shore Dep. 29; Harrelson Dep. 37; Asbill Dep. 16.

While Plaintiff did complain about harassment by Harrelson, she never complained to anyone at CURC that she felt as though she was harassed or discriminated against because of her race. Shore Dep. 26; Harrelson Dep. 48; Asbill Dep. 14; Borusovic Dep. 47; Baiden Dep. 11. Plaintiff was aware of how to make such complaints because she complained to human resources on January 21, 2010, about alleged inappropriate sexual comments made by a co-worker. Memo (Ex. 56 to Def. Motion).

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."

-7-

Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Numerosity Requirement in Title VII

Title VII prohibits discrimination by an employer.  It defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b). Thus, an employee can bring a Title VII claim only against an employer that has fifteen or more employees. The Supreme Court has held that this employee numerosity requirement is an essential element of a Title VII plaintiff's claim for relief.  Arbaugh v. Y & H Corp., 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

It is undisputed that CURC had less than fifteen employees.  However, Plaintiff argues that CURC, AUC, Grand Strand Urology and Parkway Surgical are sufficiently integrated such that they constitute a single employer for determining whether an employer meets the numerosity requirement. Under the "integrated employer" test, two companies may be considered so interrelated that they constitute a single employer. Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir.1999). In determining whether to treat two corporate entities as one "integrated employer," the factors courts

-8-

have considered include: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. Id. However, no single factor is conclusive. Id.

Plaintiff points to the following facts supporting the integrated employer test: Plaintiff's application went to AUC; AUC is the only employer listed on the application for employment; Plaintiff was provided with an AUC employee handbook; Harrelson was an employee of Parkway Surgical and was transferred to CURC; CURC is a division of AUC, CURC, AUC Grand Strand Urology, and Parkway Surgical have common ownership, share the same board members, and are listed as affiliates of one another; AUC supplies human resources, billing, administrative, IT and accounting services to CURC; AUC administers all benefits for Grand Strand Urology, CURC, and Parkway Surgical; AUC lists CURC as one of its offices; Plaintiff's termination letter states that she violated AUC's computer and electronics policy; AUC provides all information to the South Carolina Department of Employment and Workforce (SCDEW); and AUC provided the response to the Equal Employment Opportunity Commission (EEOC) regarding Plaintiff's complaints.

Defendants do not address this argument in their reply. Given the fact that the employment application, the employee handbook, and the computer and electronics policy all refer to AUC as Plaintiff's employer, that AUC handles all labor relations issues, including human resources issues, and SCDEW and EEOC communications, and the common ownership between AUC and CURC, Plaintiff has presented sufficient evidence to create an issue of fact as to whether CURC and AUC constitute a single employer for the purpose of meeting the numerosity requirement under Title VII.[3] See, e.g., Torres-Negron v. Merck & Company, Inc., 488 F.3d 34, 43 (1st Cir. 2007)(finding a

---

[3]In addition to her Title VII causes of action, Plaintiff alleges a race discrimination claim under 42 U.S.C. § 1981 and state law claims for intentional infliction of emotional distress and defamation, which do not include numerosity requirements.

"triable issue of fact" on integrated employer issue); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235 (2006) (holding that if satisfaction of an essential element of a claim for relief is at issue, the jury is the proper trier of contested facts).

### B.    Race Discrimination

Title VII[4] makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, she may establish through direct or circumstantial proof that a protected characteristic such as gender was a motivating factor in the employer's adverse decision. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir.2004) (en banc). Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir.1995)). "[A] plaintiff must demonstrate that a 'protected trait ... actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n. 7 (4th Cir.2008) (quoting Hill, 354 F.3d at 286).

When direct evidence is lacking, a plaintiff may proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36

---

[4] Section 1981 claims are subject to the same analysis as the Title VII claims. Thompson v. Potomac Electric Power Co., 312 F.3d 645, 649, n. 1 (4th Cir.2002) (analysis of § 1981 claim the same as Title VII); Gairola v. Commonwealth of Virginia Dept. of Gen. Svcs., 753 F.2d 1281, 1285 (4th Cir.1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same.").

L.Ed.2d 668 (1973). Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. To establish a prima facie case of race discrimination in a termination case, the plaintiff must present facts showing that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir.2004). The fourth element can also be met by showing other circumstances giving rise to a reasonable inference of unlawful discrimination. Miles v. Dell, Inc., 429 F.3d 480, 486–87 (4th Cir.2005).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting

-11-

evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

Plaintiff asserts that she has direct evidence of race discrimination. In her deposition, Plaintiff testifies that Harrelson told her[5] Dr. Shore made a comment after Plaintiff's interview that the only thing wrong with Plaintiff was that she was black. Pl. Dep. 47-48. This comment[6] fails to constitute direct evidence because it is an isolated remark unrelated to the challenged employment practice.[7] Courts in this circuit have recognized that stray comments cannot alone constitute evidence of discrimination. See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir.1999) (Title VII) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.") (internal quotation marks and alterations omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Thus, Plaintiff fails to present direct evidence of discrimination.

As such, Plaintiff must rely on the McDonnell Douglas proof scheme to present her claim

---

[5]In an affidavit prepared after Plaintiff's deposition, Plaintiff avers that Dr. Shore made the comment to her. Pl. Aff. ¶ 38. In response to Defendants' Motion to Strike (Document # 39) this and other portions of her affidavit, Plaintiff consented to striking the portion of paragraph 38 indicating that Dr. Shore made the comment to her.

[6]It is undisputed that this statement constitutes double hearsay. "[S]ummary judgment affidavits cannot be conclusory, or based upon hearsay." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). Double hearsay is admissible if each statement conforms to an exception to the hearsay rule. Fed.R.Evid. 805. Plaintiff argues that both the statement made by Dr. Shore and the statement made by Harrelson are admissions by party opponents. See Fed.R.Evid. 801(d)(2)(D). Defendants argue that only the statement made by Dr. Shore is subject to the party opponent hearsay exception. The court need not reach this issue because, even if the statement is admissible, it is insufficient to constitute direct evidence of discrimination.

[7]Additionally, the statement was made by the person who hired Plaintiff almost three years prior to her termination.

-12-

of race discrimination. Defendants do not address whether Plaintiff presents sufficient evidence to create a <u>prima facie</u> case. Rather, they argue that they had a legitimate, nondiscriminatory reason for terminating her employment and that Plaintiff fails to show that this reason was pretext for a discriminatory reason. She violated company policy by using her work computer for personal reasons. Shortly before her termination, Plaintiff interrupted Dr. Shore while he was seeing a patient over her dislike of Harrelson's tone of voice with her. She also committed acts of insubordination when she worked overtime in violation of Harrelson's directives, when she refused to go home on the afternoon of January 26, 2011, when Harrelson instructed her to do so, and when she sent several "screaming" emails to Harrelson, Dr. Shore, and Asbill. Plaintiff's emails complained of Harrelson being "absolutely relentless," accused Harrelson of doing "nothing, nothing, nothing," and called Harrelson a "liar" once and a "fool" four times. Plaintiff does not dispute that she engaged in this behavior.

The record is clear that Plaintiff and Harrelson did not get along. Personality conflicts or personal animus—as long as not motivated by traits protected by Title VII—can constitute legitimate, non-discriminatory rationales for an employer's actions. <u>Hawkins</u>, 203 F.3d at 282 (citing <u>Van Stan v. Fancy Colours & Co.</u>, 125 F.3d 563, 567 (7th Cir. 1997)). Plaintiff fails to present sufficient evidence that Harrelson's behavior was motivated by racial animus. Furthermore, Dr. Shore, not Harrelson, made the decision to terminate Plaintiff's employment. <u>See</u> Shore Dep. 29; Harrelson Dep. 37; Asbill Dep. 16. <u>See</u>, <u>e.g.</u>, <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 291 (4th Cir.2004) ("Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision.").

Plaintiff also argues that she witnessed much more "aberrant behavior" from Harrelson, a

white employee, who was not disciplined.  Plaintiff argues that evidence that a similarly situated employee outside the protected class can show pretext, citing Gordon v. United Airlines, Inc., 246 F.3d 878, 892 (7th Cir. 2001).  However, Harrelson was her direct supervisor and, thus, was not a similarly situated employee.  Further, such evidence alone is insufficient to show pretext.  In Gordon, the plaintiff presented other evidence of pretext.  Id.  In addition, this argument of pretext does not address all of the reasons given for Plaintiff's termination, such as interrupting Dr. Shore when he was with a patient, working overtime after being told she could not, and remaining at work after her "screaming" emails when told to leave.  See, e.g., Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir.2001) ("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.").   Thus, Plaintiff's argument fails.

Furthermore, Dr. Shore made the decisions to both hire Plaintiff and terminate her employment. "When the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer ...." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991). "From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." Id. (quoting Donohue & Siegelman, The Changing Nature of Employment Discrimination Litigation, 43 Stan.L.Rev. 983, 1017 (1991)).  Plaintiff testified her race played no role in her hiring: "I got the position … [b]ased on the interview, I don't think that it was based on race."  Pl. Dep. 29-30.

Courts do not sit as "super personnel departments second guessing" employment decisions. Malghan v. Evans, 118 F. App'x 731, 733 (4th Cir.2004) (citing Smith v. Univ. of N. Carolina, 632 F.2d 316, 346 (4th Cir.1980)). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are

nondiscriminatory." Id. (citing Powell v. Syracuse Univ., 580 F.2d 1150, 1156–57 (2d Cir .1978)). Plaintiff fails to show that her termination was based upon race.  Therefore, her race discrimination claim fails and summary judgment is appropriate.

### C.    Hostile Work Environment

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of the employee's protected class. 42 U.S.C. § 2000e–2(a)(1). Similarly, section 1981 prohibits discrimination based upon race that interferes with a contractual interest. To survive a motion for summary judgment on a claim of a racially hostile work environment in violation of Title VII or § 1981, a plaintiff must show that there is a genuine issue of material fact as to whether the offending conduct was 1) unwelcome, 2) based upon race, 3) sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment, and 4) imputable to his employer. Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir.2008).

Plaintiff's hostile work environment claim fails.  As stated above, Plaintiff and Harrelson clearly did not get along.  Plaintiff sets forth Harrelson's harassing behavior in her Response:

> The actions taken by Harrelson against the Plaintiff included, Harrelson coming behind the Plaintiff and yelling at her in order to scare her, staring at the Plaintiff for long periods of time, confronting the Plaintiff with a hostile attitude, requiring the Plaintiff to come into Harrelson's office were she would yell at the Plaintiff. Harrelson's behavior amounted to stalking the Plaintiff in the office including installing a recording icon on her computer, rifling through the Plaintiff's desk when the Plaintiff was not present, intimidating the Plaintiff, etc. The Plaintiff clearly feared Harrelson due to Harrelson's behavior.

Pl. Brief p. 32. However even assuming that Harrelson was the aggressor in their conflicts, Plaintiff fails to show that the unwelcome conduct was based upon her race.  In her Response, Plaintiff fails to point to any specific instances of harassment by Harrelson that she felt was based upon her race. She argues that she "made several complaints regarding the environment as the only African-American Employee," Pl. Brief p. 30.  Additionally, during the hearing, Plaintiff argued that the

harassment was based on her race because she was treated differently than other employees and Harrelson told her that following Plaintiff's interview Dr. Shore said that Plaintiff's only problem was that she was black. However, this evidence is insufficient to create an issue of fact as to whether Harrelson's harassing behavior was based on race.

With respect to Plaintiff's argument that Harrelson's harassment was based upon her race because she was the only African-American employee, "[u]nder Fourth Circuit precedent, a dearth of African-American employees, without evidence as to the number of qualified African-Americans in the 'relevant labor pool,' does not establish even a circumstantial 'prima facie case of discrimination,' let alone direct or indirect evidence of purposeful discrimination." Diamond v. Bea Maurer, Inc., 128 Fed.Appx. 968, 971 (4th Cir. 2005) (citing Carter v. Ball, 33 F.3d 450, 456 (4th Cir.1994)); see also Clark v. Western Tidewater Regional Jail Authority, No. 2:11-cv-228, 2012 WL 1633433, *10 (E.D.Va. 2012) (holding that fact that 90% of employees were of the opposite race was insufficient to establish that any race-neutral harassment was actually based on race). Thus, Harrelson's harassing behavior coupled with Plaintiff being was the only black employee fails to create a dispute of fact as to whether Harrelson's conduct was based on race.

Next, at the hearing, Plaintiff did not point to specific instances where she was treated differently than all the other employees. In her affidavit, she stated that "every employee used the computer to send personal emails," Pl. Aff. ¶ 23, a violation of company policy and one reason for Plaintiff's termination. Defendants argue that this statement is not based on personal knowledge. Rule 56(c)(4), FRCP provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." It is not clear whether this averment is based on Plaintiff's personal knowledge. Nevertheless, even assuming this is true, it

lends little help to her hostile work environment claim. Even though one reason given for Plaintiff's termination was for her violation of the company's computer and electronic policy, there is no evidence that Harrelson ever specifically enforced this policy against Plaintiff during her employment or that Harrelson did not enforce this policy against the other employees. In other words, absent evidence that Harrelson ever disciplined or made comments to Plaintiff for sending personal emails while not disciplining or making comments to white employees for the same conduct, Plaintiff fails to present evidence of a racially hostile work environment. Thus, this argument fails as well.

Finally, Plaintiff argument that Harrelson's statement to Plaintiff that Dr. Shore said Plaintiff's only problem was her race[8] is insufficient to show that Plaintiff suffered severe or pervasive harassment that was based upon her race. Plaintiff does not argue that Dr. Shore harassed her. Thus, Plaintiff appears to argue that this statement to her by Harrelson alone was severe harassment. However, courts have repeatedly found that isolated statements alone, unless extremely serious, fail to meet the severe or pervasive standard required for a hostile work environment claim. See, e.g., Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir.1986) ("To establish a hostile atmosphere, Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]) (Thomas, dissenting); Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted).

---

[8] See footnote 6, supra. Again, the court need not reach the hearsay issue because, assuming this statement is admissible, it is insufficient to constitute a hostile work environment.

In sum, Title VII is not a "general civility code." <u>Oncale v. Sundowner Offshore Services,</u> <u>Inc.</u>, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." <u>EEOC v. Sunbelt</u> <u>Rentals, Inc.</u>, 521 F.3d 306, 315 (4th Cir.2008). Plaintiff fails to present sufficient evidence, either separately or considered as a whole, to create an issue of fact as to her hostile work environment claim. Therefore, summary judgment is appropriate.

### D.     Retaliation

Title VII prohibits retaliation against an employee because the employee "opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has . . . participated in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a <u>prima facie</u> case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. <u>Ross v. Communications Satellite</u> <u>Corp.</u>, 759 F.2d 355, 365 (4th Cir.1985); <u>Laughlin v. Metropolitan Washington Airports Authority</u>, 149 F.3d 253, 258 (4th Cir.1998); <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a <u>prima facie</u> case, Defendant can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff has the opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. <u>See</u> <u>Matvia v. Bald Head Island</u> <u>Management</u>, 259 F.3d 261, 271 (4th Cir.2001).

Defendant argues that Plaintiff's retaliation claim fails because Plaintiff did not engage in protected activity. To constitute protected activity, Plaintiff's opposition must have been based on a class protected by Title VII-"race, color, religion, sex, or national origin." 42 U.S.C. §

2000e–2(a)(1).  The record reveals that Plaintiff never complained of any discrimination based upon her race.  Shore Dep. 26; Harrelson Dep. 48; Asbill Dep. 14; Borusovic Dep. 47; Baiden Dep. 11. Additionally, her complaints about Harrelson's treatment of her do not mention race as a reason for the treatment.  "Making general workplace complaints is not protected activity." Albero v. City of Salisbury, 422 F.Supp.2d 549, 560 n. 43 (D.Md.2006); see also Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir.1995) (in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir.2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.") (citing Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1147 (7th Cir.1997); Albero, 422 F.Supp.2d at 560 n. 43 (holding complaints of favoritism are not sufficient to amount to protected activity). The fact that Plaintiff was the only black employee is insufficient to show that her complaints were based on race.  Miller v. Am. Fam. Mut. Ins., 203 F.3d 997, 1008 (7th Cir.2000) (holding that Plaintiff did not engage in a protected activity where "[h]er complaints instead concerned a general displeasure with being paid less than her co-workers given her longer tenure and the fact that she had trained some of them" and not discrimination based on a protected class).  Thus, Plaintiff's complaints about Harrelson were not protected activity.

Plaintiff also argues that she was subjected to racist jokes.  Plaintiff does not explicitly describe these racist jokes in her Response, but cites to an exhibit to her affidavit that includes a description.  See Pl. Aff. Ex. 3.  She describes a conversation she had with Harrelson over dinner one evening in October or November of 2008, during which she told Harrelson about two race-related comments made by two coworkers.  Id.  Plaintiff told Harrelson that Jennifer Baiden stated that car salesmen did not harass Plaintiff when she was looking for a car because she was black and they

assumed she would not buy anything anyways.  Id.  She also told Harrelson that she overheard

Wanda Dunn talking to another employee, telling her that her father was upset because he spotted

"niggers" walking through his yard.  Id.

A complaint of discrimination made to a supervisor verbally, on an informal basis can be as

protected act as well as a formal charge of discrimination.  Armstrong v. Index Journal Co., 647 F.2d

441, 448 (4th Cir. 1985).  However, Plaintiff fails to point to any evidence of a causal connection

between these complaints and her termination.[9]  Thus, Plaintiff cannot establish retaliation for these

complaints.

Finally, even if Plaintiff could establish a prima facie case of retaliation, for the reasons

discussed above with respect to her discrimination claim, Defendants present a legitimate,

nondiscriminatory, or, here, nonretaliatory, reason for her termination and Plaintiff fails to show that

the reason given is pretext for a discriminatory reason.  Therefore, summary judgment is also

appropriate on Plaintiff's retaliation claim.

### D.    State Law Claims

Plaintiff also asserts state law causes of action against Harrelson for intentional infliction of

emotional distress and defamation.  However, if the district judge accepts this Report and

Recommendation, the original federal jurisdiction claims will be dismissed and the only remaining

---

[9]Plaintiff does mention temporal proximity with respect to her complaints about Harrelson, which were not race-based, and her termination.  A causal connection can be established based on temporal proximity alone, that is, where the employer takes adverse employment action against an employee shortly after learning of the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). However, the passage of time tends to negate any inference of a causal connection. See Clark County Sch. Dist. v. Breeden, 532 U .S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that temporal proximity must be "very close" to infer causality at prima facie case) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3–month period insufficient to prove causal connection); Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (7th Cir.1992) (4–month period insufficient)).  Plaintiff asserts that she told Harrelson about her coworkers' comments in either October or November of 2008. Plaintiff was terminated in January of 2011.  The passage of over two or more years negates causality based upon closeness in time.

claim will be Plaintiff's state law claims.  Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law claims.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 25) be granted as to Plaintiff's Title VII and § 1981 causes of action and that the remaining state law claims be remanded to the Horry County Court of Common Pleas.


                                    s/Thomas E. Rogers, III
                                    Thomas E. Rogers, III
                                    United States Magistrate Judge

July 30, 2014
Florence, South Carolina